351 So.2d 247 (1977)
Morris Lee JAVERS, Jr., Dennis Reed and Genevieve Cole
v.
COUNCIL OF the CITY OF NEW ORLEANS, Hon. Philip C. Ciaccio, Hon. A. L. Davis, Jr., Hon. Joseph V. DiRosa, Hon. Clarence O. Dupuy, Hon. Frank A. Friedler, Jr., Hon. John D. Lambert, Jr., Hon. James A. Moreau.
No. 8803.
Court of Appeal of Louisiana, Fourth Circuit.
October 12, 1977.
Rehearing Denied November 10, 1977.
*248 Charles Patrick Amato, Jr., Jack Mark Stolier and Guy M. Huard, New Orleans, for plaintiffs-appellees.
Arthur L. Ballin, New Orleans, for intervenors-appellants.
Philip S. Brooks, City Atty., and Jacob Taranto, III, Deputy City Atty., for defendants-appellants (Council of the City of New Orleans).
Before STOULIG, BOUTALL and SCHOTT, JJ.
SCHOTT, Judge.
The members of the Council of the City of New Orleans have appealed from a judgment which made peremptory a writ of mandamus compelling the council to submit to the electorate of the City a proposed amendment to the home rule Charter of the City of New Orleans.
The charter contains the following provisions relative to amendments:
"Section 9-201. Method of Amendment. This Charter may be amended or replaced only by the affirmative vote of a majority of the qualified electors of the City voting upon such amendments or proposed Charters. Proposals to amend or replace this Charter may originate only in the following manner:
(a) By ordinance of the Council.
(b) By petition of not less than ten thousand of the duly qualified registered voters of the City filed with the Council, setting forth the proposed amendments or substitute home rule Charter."
"Section 9-202. Calling of an Election.

(2) Within sixty days of the receipt of a petition proposing an amendment to the Charter or a substitute charter, the Council shall provide by ordinance that the proposed amendment or substitute charter shall be published at length in the official journal not less than sixty days prior to the election, and shall be submitted to the electors of the City at the next Congressional election if the date of such election is not less than ninety days after the effective date of such ordinance, or when the petition so demands, at a special election called for the purpose, the date of which shall be fixed at not less than ninety nor more than one *249 hundred twenty days after the effective date of such ordinance."
The requisite number of voters signed a petition for an amendment which would establish a tenant-landlord relations commission in order to deal with a "serious public emergency" existing because of housing conditions in the city. When the Council refused to submit the proposal to a referendum this action followed.
The proposal would confer on the tenant-landlord relations commission the power to set maximum rents and to roll back rents to a base amount, and generally to control rents within the City. It would have numerous requirements with respect to the contents of a lease between a landlord and a tenant and would require a copy of any type of lease used by any landlord to be filed with the commission. It would require the registration with the City of any rental facility. It would prevent the commencement of eviction proceedings in court unless the commission or its administrator first provided to the landlord a certificate of eviction. These provisions along with others would fly in the face of the laws of the State of Louisiana as found in the Civil Code, Revised Statutes, and Code of Civil Procedure pertaining to freedom of contract, property rights in general and relations between landlord and tenant in particular. Key provisions of the proposal interfere drastically with the right of citizens to use the courts as set forth in the Civil Code and the Code of Civil Procedure. As such these provisions would be unconstitutional in that the home rule Charter of the City of New Orleans which is sought to be amended by incorporation of these provisions can only be amended within the perimeters of Art. 14, § 22, of the Constitution of 1921 which provides:
"The city of New Orleans shall, however, not exercise any power or authority which is inconsistent or in conflict with any general law." [1]
Furthermore, Art. 6, § 9, of the Constitution of 1974 entitled "Limitation of Local Governmental Subdivisions" provides as follows:
"(A) Limitations. No local governmental subdivision shall (1) define and provide for the punishment of a felony; or (2) except as provided by law, enact an ordinance governing private or civil relationships."
Although there is a severability clause in the proposal, appellees admitted in oral argument that the proposal would be meaningless if stripped of those sections mentioned above which are vulnerable to constitutional attack.
The issue becomes whether the Council had any discretion to submit or not to submit such a proposal to a referendum. Is its duty only ministerial so that it must submit a proposal which has been made by ten thousand electors no matter how clear-cut its invalidity may be? Appellees answer in the affirmative, but we disagree.
There must be a rule of reason or reasonableness in the implementation of this Charter provision which would save the City the needless expense of conducting a referendum concerning a proposal which, if adopted, would be invalid. We believe that reason requires the Council to exercise some discretion in such a situation. Appellees argue that this would permit the Council to frustrate the plain wording of the Charter but surely that wording should not be construed to produce absurd consequences.
This view is not to be interpreted to mean that the Council can refuse to submit any proposal which it might think unconstitutional because in the final analysis the court, and not the Council, will be the arbiter as to the reasonableness of their decision. If there were any doubt that the substance of this proposal might be valid the Council could not decline to submit the matter to a referendum, but in this case no such doubt exists.
The jurisprudence supports this view. In State ex rel. Bussie v. Fant, 216 La. 58, 43 *250 So.2d 217, 219 (1949), the Supreme Court said:
"As a general proposition of law, the validity or constitutionality of an ordinance will not be determined or passed on by a court until the ordinance is adopted. In the instant case, however, relators seek by mandamus the right to have submitted to the electors an ordinance which, if adopted, would be invalid. Under these circumstances, the validity of the ordinance should be determined by the court, and, if it is found to be illegal or unconstitutional, the right to the writ of mandamus should be denied. This is the better and sounder doctrine, and has been recognized by textwriters and the courts of this country."
The trial judge in this case found a distinction with the Bussie case in that the proposition there was to be submitted to the voters in such a way that its adoption would necessarily be invalid. The trial judge reasoned: "Because of the manner of calling the election the ordinance would be invalid." We fail to perceive a substantial difference in the instant case. If the amendment before us is passed, it will be invalid and whether its invalidity is caused by substance or form the same result obtains. The City will be spending money and needless effort to conduct a referendum concerning a proposal which will be nullified by the courts if passed.
The Court of Appeal, First Circuit, in Ware v. Cannon, 248 So.2d 19 (1971) reached the same result. Appellees concede that their position is inconsistent with Ware and would have us go a different way, but we have resolved to follow the same reasoning as did the court in the Ware case.
Accordingly, the judgment appealed from is reversed and set aside, and there is judgment in favor of defendant, Council of the City of New Orleans, and against the plaintiffs, dismissing their suit and recalling the writ of mandamus at the cost of the plaintiffs.
REVERSED AND RENDERED.
NOTES
[1] This provision survives pursuant to Art. 6, § 4, of the Constitution of 1974.